**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **DROPLETS, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 2:11-CV-255** |
| | § | |
| **E*TRADE FINANCIAL CORPORATION, et al.,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

**O R D E R**

The above-referenced case was referred to the undersigned United States Magistrate Judge for pre-trial purposes in accordance with 28 U.S.C. § 636. Before the Court is the following pending motion: Motion to Transfer filed by Defendants E*TRADE Financial Corporation, E*TRADE Securities, LLC, E*TRADE Bank (collectively, "E*TRADE"), The Charles Schwab Corporation, Charles Schwab & Co., Inc., Charles Schwab Bank, Schwab Holdings, Inc. (collectively, "Charles Schwab"), Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith, Incorporated (collectively, "Merrill Lynch"), OptionsHouse, LLC ("OptionsHouse"), PEAK6 Investments, L.P., Scottrade, Inc., Scottrade Financial Service, Inc. (collectively, "Scottrade"), TD Ameritrade Holding Corporation, TD Ameritrade, Inc. (collectively, "TD Ameritrade"), Zecco Holdings, Inc., Zecco Trading, Inc., and Zecco Forex, Inc. (collectively, "Zecco") (all collectively referred to herein as "Defendants"). Dkt. No. 55. Also before the Court are Plaintiff's response, Defendants' reply, and Plaintiff's sur-reply. Dkt. Nos. 77, 84 & 89. Having considered the briefing and all relevant papers and pleadings, the Court finds that Defendants' motion should be **GRANTED**.

## I. LEGAL PRINCIPLES

Title 28, Section 1404(a) of the United States Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A district court has broad discretion in deciding whether to order a transfer. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). The Supreme Court of the United States has noted that Section 1404(a) is intended to place discretion in the district court to adjudicate motions to transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

The Court of Appeals for the Fifth Circuit has set forth that the first "threshold" determination a district court must make under Section 1404(a) is whether the claims could have been brought in the proposed transferee district. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). After such a determination, the district court must then consider the convenience of the parties and witnesses in both forums. *Id.*; *see also Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009); *Bolt v. Toyota Indus. Corp.*, 351 F. Supp. 2d 597, 599 (E.D. Tex. 2004).

A convenience determination consists of balancing the conveniences and inconveniences resulting from the plaintiff's choice of venue, in comparison with those of the proposed venue. This balancing includes examining several private and public interest factors, none of which has dispositive weight. *Volkswagen I*, 371 F.3d at 203. The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical

problems that make trial of a case easy, expeditious and inexpensive." *Id.* (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n.6 (1981)); *see also In re TS Tech*, 551 F.3d at 1319. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws o[r] the application of foreign law." *Volkswagen I*, 371 F.3d at 203 (citing *Piper*, 454 U.S. at 241 n.6); *see also In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a separate factor. *Volkswagen II*, 545 F.3d at 314-15. Instead, the plaintiff's choice of venue contributes to the defendant's burden to prove that the transferee venue is "clearly more convenient" than the plaintiff's chosen venue. *Id.* at 315; *In re TS Tech*, 551 F.3d at 1319. Also, although the private and public interest factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 314-15.

## II. DISCUSSION

Plaintiff filed suit on May 13, 2011, alleging infringement of United States Patent No. 6,687,745, titled "System and Method for Delivering a Graphical User Interface of Remote Applications Over a Thin Bandwidth Connection," and United States Patent No. 7,502,838, titled "System and Method for Delivering Remotely Stored Applications and Information." *See* Complaint, Dkt. No. 1.

Defendants move to transfer the above-captioned case to the Southern District of New York. Dkt. No. 55.

Defendants submit that Plaintiff could have filed this suit in the Southern District of New

York. Dkt. No. 55 at 6. Plaintiff does not dispute this. *See* Dkt. No. 77.

**A. Private Interest Factors**

(1) Sources of Proof

Despite technological advances that undoubtedly reduce the relative inconvenience of transporting documents across the country, this factor must still be considered. *Volkswagen II*, 545 F.3d at 316 ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous.").

Defendants submit that the location of Defendants' sources of proof is more important than the location of Plaintiff's sources of proof because "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

Plaintiff responds that it resides in the Eastern District of Texas; only one Defendant fully resides in the Southern District of New York; and the remaining Defendants are "geographically dispersed across the U.S." in California, Illinois, Missouri, Nebraska, and North Carolina. Dkt. No. 77 at 5 & n.9. Plaintiff also submits that Defendants have various facilities and employees that either are within Texas or are nearer to Texas than to New York. *Id.* at 7-10. Plaintiff further cites non-party content providers and developers located in Colorado, Georgia, and Illinois. *Id.* at 11. Finally, Plaintiff notes that William Tracey, a named inventor on a patent cited by one of the patents-in-suit, resides in Austin, Texas. *Id.* at 11 n.19.

This Court's "centralized" location, however, is generally not a proper consideration. *In re Genentech*, 566 F.3d at 1344. On balance, particularly given that one defendant is headquartered in

the Southern District of New York and no defendant is headquartered in the Eastern District of Texas, this factor weighs in favor of transfer. *Cf. In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1199-1200 (Fed. Cir. 2009) ("Because most evidence resides in Washington [the proposed transferee venue] or Japan with none in Texas, the district court erred in not weighing this factor heavily in favor of transfer."); *In re Genentech,* 566 F.3d at 1345.

(2) Availability of Compulsory Process

Plaintiff argues that this factor is neutral because "four inventors and one patent prosecutor have signed declarations or agreements submitting to EDTX jurisdiction." Dkt. No. 77 at 12 (citing Ex. 34). Plaintiff also submits that William Tracey, a named inventor on a patent cited by one of the patents-in-suit, resides in Austin, Texas. *Id.* at 11 n.19.

Defendants submit that the Southern District of New York has absolute subpoena power (for depositions as well as trial) over at least six of the seven named inventors of the patents-in-suit, as well as over four of the five attorneys who prosecuted the patents-in-suit. Dkt. No. 55 at 7-8; *see In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). Defendants also submit that "Markit Group Ltd., Wall Street On Demand (owned by Markit Group Ltd.), and/or Thomson Reuters are suppliers who provide potentially relevant accused functionality for at least six of seven defendants." Dkt. No. 84 at 3. Defendants further submit that during deposition, Plaintiff's Chief Executive Officer identified three additional relevant and material witnesses who are subject to compulsory process in the Southern District of New York: (1) Paul Biddelmann, representative of Plaintiff's largest shareholder, Hanseatic Corporation; (2) "Bill Power, formerly in change of marketing for [Plaintiff's] products allegedly embodying the patents-in-suit"; and (3) "Thomas MacIsaac, who handled sales of [Plaintiff's] relevant products for three years." Dkt. No. 84 at 3.

On one hand, Plaintiff has indeed shown that four of the named inventors are employed in some capacity by Plaintiff. *See* Dkt. No. 77 at Ex. 34 (Declarations of Lou Franco (consulting and on Board of Directors), Frank Rose (Chief Technology Officer and on Board of Directors), Greg Blonder (consulting and on Advisory Board), and Philip Brittan (consulting)).

On the other hand, Plaintiff has not shown that the agreement of a patent prosecution attorney to appear in the Eastern District of Texas is equivalent to the Court actually having subpoena power over that witness. *See id.* at Ex. 34 (Declaration of Timothy Bechen). Further, even assuming that five of the eleven individuals at issue (plus William Tracey, the potential prior art inventor who resides in Austin, Texas) are subject to this Court's subpoena powers, Plaintiff does not dispute that ten of the eleven are subject to the absolute subpoena powers of the Southern District of New York. Further, the three additional non-party witnesses identified by Defendants bring the total to thirteen non-party witnesses who are subject to compulsory process in the Southern District of New York. Dkt. No. 84 at 4.

On balance, this factor weighs in favor of transfer. *In re Genentech*, 566 F.3d at 1345 ("The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly.").

(3) Cost of Attendance for the Parties and Witnesses

This factor is analyzed giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *Volkswagen I*, 371 F.3d at 204. Further, courts are not to consider the "significance of the identified witnesses' testimony," at least not beyond "assess[ing] the relevance and materiality of the information the witness may provide." *In re Genentech*, 566 F.3d at 1343. The relative materiality of witnesses' testimony is irrelevant to this

inquiry. *See id.* ("Requiring a defendant to show that a potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary."). Thus, for the transfer analysis, all potential material and relevant witnesses must be considered as offering testimony of equal importance.

The Fifth Circuit has adopted a "100-mile rule" to assist in analyzing this factor. *See Volkswagen I*, 371 F.3d at 204-205. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 205. When applying the 100-mile rule, the threshold question is whether the plaintiff's chosen venue and the proposed venue are more than 100 miles apart. *See Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. If so, then a court determines the respective distances between the residences (or workplaces) of all the identified relevant witnesses and the two venues under consideration. *See Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320.

The 100-mile rule generally favors transfer (with differing degrees) if the proposed venue is a shorter average distance away from witnesses than the plaintiff's chosen venue. *See Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. Finally, for this factor to favor transfer, the proposed venue need not be more convenient for *all* of the witnesses. *In re Genentech*, 566 F.3d at 1345. Instead, this factor can favor transfer when a "substantial number of material witnesses reside in the transferee venue" and no witnesses reside in plaintiff's chosen venue. *Id.*

Because the Southern District of New York is more than 100 miles away from the Eastern District of Texas, the Court applies the 100-mile rule.

The Court has not yet held a scheduling conference in the above-captioned case. The Court

has previously been faced with parties who dispute whether the convenience factors can be evaluated without the benefit of initial disclosures exchanged pursuant to Federal Rule of Civil Procedure 26(a)(1). *See, e.g., GHJ Holdings, LLC v. Mag Instrument, Inc.*, C.A. No. 5:10-CV-230, Dkt. No. 26 (E.D. Tex. Apr. 5, 2011). The parties have not presented such a dispute, so the Court relies upon the representations in the parties' briefing regarding witnesses.

Plaintiff is headquartered in Plano, Texas, which is within the Eastern District of Texas. Plaintiff's Chief Executive Officer works at that headquarters. Dkt. No. 77 at 1-3. Defendants note, however, that Plaintiff's "other two employees — its Chief Technology Officer and its Chief Financial Officer — reside in Brooklyn, New York, and Stamford, Connecticut, just 42 miles from New York." Dkt. No. 84 at 1.

As to Defendants, Plaintiff submits that E*TRADE is in New York, Merrill Lynch is in both New York and North Carolina, Charles Schwab is in California, OptionsHouse is in Illinois, Scottrade is in Missouri, TD Ameritrade is in Nebraska, and Zecco is in California. Dkt. No. 77 at 5 n.9. According to Defendants, TD Ameritrade and Zecco both have personnel in New Jersey. Dkt. No. 55 at 10.

As to non-parties, six of the seven named inventors and four of the five patent prosecution attorneys, as well as the three additional non-party witnesses identified by Defendants in Section II.A.(2), above, reside in the Southern District of New York or within 100 miles of its Manhattan courthouse. Dkt. No. 55 at 1 & 7-8; Dkt. No. 84 at 3.

On balance, although several Defendants, such as Charles Schwab, Scottrade, TD Ameritrade, and Zecco, are headquartered closer to the Eastern District of Texas than to the Southern District of New York, this Court's "centralized" location is generally not a proper consideration and

does not outweigh the presence of E*TRADE and the thirteen identified non-party witnesses in the Southern District of New York (or within 100 miles of the Manhattan courthouse thereof). *In re Genentech*, 566 F.3d at 1344. This factor therefore weighs in favor of transfer.

(4) Practical Problems

The above-captioned case is at an early stage, having not yet had a scheduling conference. Nonetheless, "the existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice." *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*Volkswagen III*").

Plaintiff notes its prior litigation in this Court in *Droplets, Inc. v. Adobe Systems Inc., et al.*, Civil Action No. 2:06-CV-307, in which United States District Judge T. John Ward presided and in which United States Magistrate Judge Everingham held a claim construction hearing on May 20, 2008. *See* 5/20/2008 Hr'g Tr., C.A. No. 2:06-CV-307, Dkt. No. 155. The case settled before the Court entered a claim construction order. *See id.*, Dkt. Nos. 173 & 175. Plaintiff also submits it currently has two co-pending cases in this Court, both filed after the above-captioned case. *Droplets, Inc v. Amazon.com, Inc., et al.*, C.A. No. 2:11-CV-392; *Droplets, Inc. v. eBay, Inc., et al.*, C.A. No. 2:11-CV-401. Plaintiff notes that no motion to transfer has been filed in either of those cases. Dkt. No. 77 at 14. Plaintiff also submits that "[t]he SDNY conducts notably longer trials than the EDTX" and that "food and lodging are significantly less expensive in the EDTX than in the SDNY." *Id.* at 14.

Defendants respond that because Judge Ward and Judge Everingham left the bench in September 2011, the Court's experience in *Droplets, Inc. v. Adobe Systems Inc., et al.*, no longer affects judicial economy. Dkt. No. 55 at 2 & 14.

On balance, the judicial economy of keeping the above-captioned case together with Plaintiff's two co-pending cases weighs against transfer. The relative weight of this factor is discussed further in Section II.C., below.

**B. Public Interest Factors**

(1) Court Congestion

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. A proposed transferee court's "less congested docket" and "ab[ility] to resolve this dispute more quickly" is a factor to be considered. *In re Hoffmann-La Roche*, 587 F.3d at 1336.

Plaintiff submits that the median time to trial is 31.1 months in the Southern District of New York and only 23.2 months in the Eastern District of Texas. Dkt. No. 77 at 15.

On balance, this factor weighs slightly against transfer. *In re Genentech*, 566 F.3d at 1347 (noting that this factor is the "most speculative," and in situations where "several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of those other factors").

(2) Local Interest

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206. Thus, this factor analyzes the "factual connection" that a case has with both the transferee and transferor venues. *See Volkswagen I*, 371 F.3d at 206. Generally, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *Volkswagen II*, 545 F.3d at 318 (in a products liability suit, disregarding local interest of citizens who used the widely-sold product within the plaintiff's chosen

venue); *In re TS Tech*, 551 F.3d at 1321 (in a patent suit, disregarding local interest of citizens in the plaintiff's chosen venue who used the allegedly infringing products because the products were "sold throughout the United States").

On one hand, Defendant E*TRADE is headquartered in the Southern District of New York, and "the cause of action calls into question the work and reputation" of its employees in that district. *In re Hoffman-La Roche*, 587 F.3d at 1336. Also, Plaintiff was founded in New York in 2000. Dkt. No. 77 at 2.

On the other hand, Plaintiff moved its headquarters to Dallas, Texas in 2005 and to Plano, Texas, which is within the Eastern District of Texas, in 2009. *Id.* at 1-3. Plaintiff's "Chief Executive Officer, David Berberian, works from [Plaintiff's] Plano, Texas headquarters" and "has lived in Texas for over 30 years." *Id.* Although Defendants argue that Plaintiff relocated from the Southern District of New York to the Eastern District of Texas in anticipation of the prior litigation in *Droplets, Inc. v. Adobe Systems, Inc.*, *et al.*, cited above, the Court assumes for the sake of the present motion that Plaintiff's presence in Texas and in this Court's district is not "recent, ephemeral, and an artifact of litigation." *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010); *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011) (rejecting reliance on place of incorporation where done "in anticipation of litigation"); *see also In re Verizon Business Network Services, Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011) (noting plaintiff's acknowledgment that its documents in the Eastern District of Texas were "artifacts of its prior litigation").

On balance, the Southern District of New York and the Eastern District of Texas have comparable local interests in the above-captioned case. The local interest factor is therefore neutral.

(3) Familiarity With the Governing Law

No party has shown that this factor is applicable. The Court accordingly finds this factor neutral.

(4) Avoidance of Unnecessary Conflict of Laws Problems

No party has shown that this factor is applicable. The Court accordingly finds this factor neutral.

**C. Balancing the Factors**

In sum, the location of sources of proof, availability of compulsory process, and the convenience of witnesses all favor transfer; judicial economy weighs against transfer; court congestion weighs slightly against transfer; and, the remaining factors are neutral.

The Court of Appeals for the Federal Circuit has "considered and rejected arguments that the preservation of judicial economy should preclude transfer to a far more convenient venue." *In re Morgan Stanley*, Misc. Nos. 962, 964, 967, 417 Fed. App'x 947, 949 (Fed. Cir. Apr. 6, 2011). The Court's prior experience in *Droplets, Inc. v. Adobe Systems, Inc., et al.*, does not override the convenience factors favoring transfer, particularly in light of *In re Verizon*:

> To interpret § 1404(a) to hold that any prior suit involving the same patent can override a compelling showing of transfer would be inconsistent with the policies underlying § 1404(a). We recently advised against such ironclad rules in *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347, n.3 (Fed. Cir. 2010) and we heed that advice on these facts. In *Vistaprint*, we stated:
>
>> Our holding today does not mean that, once a patent is litigated in a particular venue the patent owner will necessarily have a free pass to maintain all future litigation involving that patent in that venue. However, where, as here, the trial court performed a detailed analysis explaining that it is very familiar with the only asserted patent and the related technology, and where there is a co-pending litigation before the trial court involving the same patent-in-suit, and pertaining to the

> same underlying technology and accusing similar services, we cannot say the trial court clearly abused its discretion in denying transfer. [*Id.*]

*In re Verizon*, 635 F.3d at 562.

The issue, then, is whether Plaintiff's two co-pending cases warrant denial of transfer in the interest of judicial economy. *In re Zimmer* specifically addressed this issue:

> The district court assigned substantial weight in its analysis to the fact that MedIdea [the plaintiff] had also filed suit against another defendant in the same forum. However, in the circumstances of this case, we cannot say this negates the significance of having trial close to where most of the identified witnesses reside and where the other convenience factors clearly favor. Unlike *Volkswagen* [*III*], the overlap between MedIdea's two actions, both of which are in the infancy stages of litigation, is negligible. *See* 566 F.3d at 1351 (denying petition to transfer where judicial economy is served by having the same district court try multiple infringement suits against a total of thirty foreign and domestic automobile manufacturers involving the same technical patents). In the instant action, MedIdea alleges infringement of two patents related to hip implants and four patents related to shoulder implants. Whereas, in the other action, MedIdea alleges infringement of nine patents related to knee implants and a single patent related to shoulder implants. Because the *cases involve different products with only a single overlapping patent and no defendant is involved in both actions*, it is likely that these cases will result in significantly different discovery, evidence, proceedings, and trial.

609 F.3d at 1382 (emphasis added). On one hand, whereas the cases at issue in *In re Zimmer* had only one patent in common, the above-captioned case involves the same two patents-in-suit as the two co-pending cases. *See* Dkt. No. 77 at 2. On the other hand, the two co-pending cases involve slightly different allegations and appear to involve different categories of Defendants:

The above-captioned case is brought against various financial firms and alleges infringement by systems that "transmit and display *financial* information." *See, e.g.,* Dkt. No. 1 at ¶ 40 (emphasis added).

Civil Action No. 2:11-CV-392 is brought against Amazon.com, Inc., Apple, Inc., Google,

Inc., Facebook, Inc., Yahoo!, Inc., and YouTube, LLC, and alleges infringement by systems that "transmit and display information." *See* Second Amended Complaint, C.A. No. 2:11-CV-392, Dkt. No. 23 at ¶ 22.

Civil Action No. 2:11-CV-401 is brought against eBay, Inc., Nordstrom, Inc., Overstock.com, Sears Roebuck & Co., Sears Brands LLC, Sears Holdings Corporation, Target Corporation, Target Brands, Inc., and Williams Sonoma, Inc., most of which are retailers, and alleges infringement by systems that "transmit and display *search suggestions*." *See* Complaint, C.A. No. 2:11-CV-401, Dkt. No. 1 at ¶ 25.

Although Plaintiff's pleadings in these cases do not (and are not required to) present the same level of detail that will be required in infringement contentions under Local Patent Rule 3-1, Plaintiff's differing allegations and grouping of defendants into three separate cases should not be ignored. On balance, the above-captioned case is sufficiently distinct from the two co-pending cases so as to be analogous to *In re Zimmer*. *See* 609 F.3d at 1382.

In sum, considerations of judicial economy and court congestion are outweighed by the location of sources of proof, the availability of compulsory process, and the convenience of witnesses.

## III. CONCLUSION

Defendants' Motion to Transfer (Dkt. No. 55) is hereby **GRANTED**. The above-captioned case is hereby **TRANSFERRED** to the Southern District of New York.

**IT IS SO ORDERED.**
**SIGNED this 5th day of March, 2012.**

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE